IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMANDA THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:21-cv-00426 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| TENNESSEE DEP'T OF HUMAN ) | |
| SERVICES, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## **MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss (Doc. No. 9, "Motion"), supported by an accompanying Memorandum of Law. (Doc. No. 10).[1] Plaintiff filed a response (Doc. No. 16, "Response"), and Defendant filed a reply (Doc. No. 20, "Reply"). For the reasons stated herein, Defendant's Motion will be **GRANTED** in part and **DENIED** in part.

### **FACTUAL ALLEGATIONS**[2]

Plaintiff, Amanda Thomas, is a resident of Columbia, Tennessee. (Doc. No. 1 at 1). She has a master's degree in Rehabilitation Counseling from the University of Tennessee and is employed as a Masters Vocational Rehabilitation Counselor ("VRC") within the Rehabilitation

---

[1] As discussed below, the Motion essentially comprises two requests to dismiss, each of which is directed at a different part of the Complaint than is the other request. Herein, the Court will refer to each such request as a separate "motion"—what is typically, though incorrectly from a grammatical standpoint, called a "partial motion to dismiss"— even though they both are contained within a document (the Motion) styled as a single motion.

[2] The facts in this section are taken from the Complaint (Doc. No. 1) and, as discussed below, are taken as true for the purposes of the Court's analysis under Fed. R. Civ. P. 12(b)(6).

Services Division of the Tennessee Department of Human Services ("DHS"). (*Id.*). She has been a VRC for eight years, where her job is to assist individuals with disabilities to gain and maintain employment. (*Id.* at 2). Plaintiff's responsibilities include intake, preparing work plans, coordinating service delivery, and processing cases. (*Id.*).

Plaintiff suffers from chronic back pain as a result of a bulging disk in her lumbar spine. (*Id.* at 3). This pain progressively worsened through early 2019 and was further worsened by driving and carrying work materials to various workstations. (*Id.*). During the early summer of 2019, Plaintiff was based in Maury County, Tennessee, but was responsible for providing services to three counties: Maury, Hickman, and Perry. (*Id.*). In June 2019, she informed her supervisors of her back pain and told them that driving made it worse. (*Id.*).

On June 24, 2019, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") so she could have a lumbar discectomy. (*Id.*). The request noted that her recovery time would be between six to twelve weeks and that she could experience flare-ups for up to six months. (*Id.*). The request also contained a recommendation from Plaintiff's physician that she be able to work from home as needed. (*Id.*). Plaintiff underwent the surgery on July 9, 2019 and returned to the office on July 29, 2019. (*Id.* at 4). She requested to work from home the weeks of July 29, 2019 and August 5, 2019, but those requests were denied. (*Id.*).

On August 2, 2019, Plaintiff sent a request for accommodation to Malcom Richards, DHS's Americans with Disabilities Coordinator. (*Id.*). In that request, Plaintiff asked to work from home because she could not sit for extended periods of time. (*Id.*). Plaintiff did not receive an accommodation, nor was she contacted about her request. (*Id.*). She later followed up with Mr. Richards and her supervisors to no avail. (*Id.*). During this time, Plaintiff was asked to serve

additional counties (which increased her driving time), and Plaintiff's administrative support staff was removed (which increased her workload). (*Id.*).

After four months of no response to her accommodation request, Plaintiff filed an EEOC complaint with the Tennessee Department of Human Resource ("DOHR"). (*Id.*). DOHR conducted an investigation and determined that Plaintiff's request was not processed in a timely manner and remained pending as of January 9, 2020. (*Id.* at 5). By March 23, 2020, DHS had still not provided Plaintiff with an accommodation, and had instead advised Plaintiff to use her 15-minute breaks to take rests during driving. (*Id.*). DHS also suggested Plaintiff flex her schedule to reduce driving days, which would have made it impossible for Plaintiff to meet DHS' policy of responding to client inquiries within 30 days and developing a plan of employment within 90 days of a client being certified as eligible. (*Id.*).

On March 23, 2020, DHS directed Plaintiff and most DHS employees to work from home because of the COVID-19 pandemic. (*Id.*). As of the filing of her Complaint, June 1, 2021, Plaintiff still worked from home and has never received a response to her accommodation request. (*Id.*). Plaintiff also notes that at some point "recently" to the filing of her Complaint, Plaintiff applied for and was turned down for a promotion that she "was better qualified" for than the person ultimately selected. (*Id.* at 6).

## PROCEDURAL BACKGROUND

In June 2021, Plaintiff filed the Complaint in this action (Doc. No. 1), which alleges violations of the Rehabilitation Act because allegedly she was "subject to heightened scrutiny, retaliation, and denied other benefits and privileges because of her disability and/or request for accommodation." (*Id.* at 6). Plaintiff also alleges violations of the Tennessee Human Rights Act ("THRA"), because allegedly she was "subject to heightened scrutiny, retaliation, denied a

promotion, and denied other benefits and privileges because of her disability."[3] (*Id.* at 8). Via the Motion, Defendants seek dismissal of Plaintiff's THRA claims under 12(b)(1) for lack of subject-matter jurisdiction and dismissal of her Rehabilitation Act failure to accommodate and retaliation claims under 12(b)(6) for failure to state a claim upon which relief can be granted. It does not appear to the Court that Defendant's Motion addressed Plaintiff's claim for general disability discrimination under the Rehabilitation Act.

## STANDARD

### I. Motion to Dismiss Based on Alleged Immunity

Defendant purports to bring a motion to dismiss for lack of subject-matter jurisdiction because of its alleged entitlement to what Defendant couches as Eleventh Amendment immunity.[4] However, in substance, Defendant's argument on this point actually asserts sovereign immunity, which is different from Eleventh Amendment immunity. *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509 (6th Cir. 2021) (noting that Eleventh Amendment immunity is different from sovereign immunity). As the Sixth Circuit explained in *WCI, Inc.*, such conflation of sovereign immunity and Eleventh Amendment immunity is commonplace (and thus forgivable):

> The parties and the district court conflate the common-law doctrine of sovereign immunity with the immunity conferred by the Eleventh Amendment. And they are not the first: courts have often treated Eleventh Amendment immunity and sovereign immunity as interchangeable concepts. *See, e.g.*, *Lapides v. Bd. of*

---

[3] The Complaint is styled so as to appear to assert a single Rehabilitation Act claim and a single THRA claim, although each such single claim is based on multiple alleged violations of the respective statute. However, the Court herein at times will speak in terms of a particular violation of a statute, or of a particular theory of how the statute was violated, as a separate "claim."

[4] The Tennessee DHS is an "arm of the state" and therefore treated as the State, for purposes of sovereign-immunity analysis. *See Miller v. Tenn. Dep't of Human Servs.*, No. 3-15-1025, 2016 WL 3213641, at *3 (M.D. Tenn. June 10, 2016) ("The Court finds that Plaintiff's state law claims [against DHS] under the THRA, TDA and PEPFA are barred in this Court by the State's sovereign immunity, and those claims are dismissed."); *Hornberger v. Tennessee,* 782 F. Supp. 2d 561, 566–67 (M.D. Tenn. 2011) ("Consequently, the court finds that this factor, as well as the other three factors, support a determination that DHS is an arm of the state. Thus, DHS cannot be sued unless its sovereign immunity is validly abrogated or waived.").

> *Regents*, 535 U.S. 613, 616, 122 S. Ct. 1640, 152 L.Ed.2d 806 (2002); *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650 (6th Cir. 2013); *but see Alden v. Maine*, 527 U.S. 706, 713, 728–29, 119 S. Ct. 2240, 144 L.Ed.2d 636 (1999) (locating the source of sovereign immunity outside the Eleventh Amendment). But as a matter of original meaning, the two are conceptually distinct.

*Id.* at 513. The Sixth Circuit went on to explain the distinction between the two and, in the process, indicated clearly how the distinction would be one with a difference in cases like the instant one:

> The Eleventh Amendment removes from federal jurisdiction "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]" U.S. Const. amend. XI. The plain text of the amendment includes a diversity requirement and sounds in subject-matter jurisdiction. William Baude & Stephen E. Sachs, *The Misunderstood Eleventh Amendment*, 169 U. Pa. L. Rev. 609, 612 (2021) . . . State sovereign immunity, on the other hand, refers to a state's right "not to be amenable to the suit of an individual without its consent." The Federalist No. 81, at 486 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis omitted). . . . It sounds in personal jurisdiction and may be waived by a state's conduct. Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559, 1565–66 (2002). *And unlike the Eleventh Amendment, it* erects a jurisdictional bar in both state and federal courts and *does not require diversity among the litigants*. See Baude & Sachs, supra, at 614.

*Id.* at 513-14 (emphasis added). There is no diversity of parties in the present case, and therefore the Eleventh Amendment does not come into play. Rather, in substance Defendant actually is asserting a sovereign-immunity argument. This is reflected in Defendant's argument heading on this point, which reads, "The State's *Sovereign Immunity* Deprives this Court of Subject-Matter Jurisdiction Over Plaintiff's Tennessee Human Rights Act Claim," and by the content of the argument, which raises concerns about Tennessee's consent to be sued. (Doc. No. 10 at 5) (emphasis added). However, contrary to the heading just quoted, a sovereign-immunity argument sounds in personal jurisdiction, *WCI, Inc.*, 18 F.4th at 514, and therefore is appropriately brought

under Fed. R. Civ. P. 12(b)(2). The Court thus will construe Defendant's motion brought purportedly under 12(b)(1), as if it was brought (appropriately) under 12(b)(2).[5]

Ordinarily, with a Rule 12(b)(2) challenge to personal jurisdiction there are threshold considerations as to what evidence, if any, the Court may consider and what allegations, if any, the Court accepts as true in making its ruling.[6] For reasons the Court need not dwell on herein,

---

[5] The Court declines to reject Defendant's argument on the grounds that it was incorrectly couched in terms of Eleventh Amendment Immunity and lack of subject-matter jurisdiction under Rule 12(b)(1). In *WCI, Inc.*, the Sixth Circuit seemed content to address the clear substance of the defendant's immunity argument, even though it was likewise mischaracterized. *Id.* at 512-513 (noting that the defendant had asserted a lack of subject matter jurisdiction and that the parties had conflated Eleventh Amendment immunity with sovereign immunity). The Court will do likewise, realizing (as it seems the Sixth Circuit did in *WCI, Inc.*) that confusion on this point is quite understandable and the movant's error in no way obscures the true basis to the challenge to jurisdiction for a court that properly understands the distinction between sovereign immunity and Eleventh Amendment immunity.

[6] As this Court has previously explained,

> A plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant. *Elcan v. FP Assocs. LTD*, Case No. 3:19-cv-01146, 2020 WL 2769993, at *3 (M.D. Tenn. May 28, 2020). On a 12(b)(2) motion to dismiss, district courts have discretion to either decide the motion on affidavits alone, permit discovery on the issue, or conduct an evidentiary hearing. *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Where, as here, the court rules without conducting an evidentiary hearing, the plaintiff's burden of proof is "relatively slight." *Id.* (citing *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017)).
>
> Nevertheless, "[i]n response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Ramsey v. Greenbush Logistics, Inc.*, 263 F. Supp. 3d 672, 676 (M.D. Tenn. 2017) (quoting *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012)). "In other words, a 'plaintiff may not simply rest on the bare allegations of the complaint. But uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 583 (S.D. Ohio 2016) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)).
>
> Moreover, when a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Elcan*, 2020 WL 2769993, at *3. The Sixth Circuit has held that a court disposing of a Rule 12(b)(2) motion without an evidentiary hearing should not weigh the controverting assertions of the party seeking dismissal, because "we want to prevent non-resident defendants from regularly avoiding personal jurisdiction

these rules do not seem applicable to the particular question of whether Defendant possesses sovereign immunity as to Plaintiff's THRA claims. The Court does not discern clear rules in the Sixth Circuit on this specific issue but suffice it to say there does not appear to be disputed evidence in the present case.

## II. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

---

simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation and quotation marks omitted).

*Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *2–3 (M.D. Tenn. Jan. 10, 2022).

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

To support a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some evidentiary burden; as should be clear from the discussion above, evidence (as opposed to allegations as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of

thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

### I.   Plaintiff's THRA Claims Are Barred by Defendant's Sovereign Immunity

As noted above, Defendant argues that Plaintiff's claims under the THRA should be dismissed because Defendant has sovereign immunity. (Doc. No. 10 at 5). Specifically, Defendant first concedes that the State waived its sovereign immunity to an extent via the enactment of the THRA, which includes the State among the "employer[s]" potentially subject to claims under the THRA. (*Id.* at 6). However, Defendant argues, waiver of sovereign immunity is effective only with respect to THRA claims pursued in one of three ways, namely by "(1) fil[ing] a complaint with the Tennessee Human Rights Commission ("Commission"); (2) seek[ing] circuit or chancery court review of a decision by the Commission; and (3) bring[ing] an action in chancery or circuit court." (*Id.* (citing Tenn. Code Ann. §§ 4-21-302, 307, 311)). Notably absent from this list is the filing of a THRA claim in federal court. Based on this, Defendant argues:

> Because the THRA authorizes actions only in state court, it lacks the "clear declaration" or "unequivocal expression" needed for a state to waive its immunity in federal court. *See Pennhurst*, 465 U.S. at 99 (emphasizing that a State's consent to suit in federal court must be unambiguous). Federal courts have consistently and repeatedly reached this conclusion and held that the State and its agencies are immune from suit in federal court under the THRA.

(*Id.*).

In short, Defendant contends that the State's waiver of sovereign immunity as to THRA claims does not apply to suits filed in federal court.

Plaintiff did not respond to this argument, and where a party fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim." *PNC Bank, Nat. Ass'n v. Goyette Mech. Co., Inc.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015) (quoting

*Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010)). Nonetheless, the Court will briefly address whether Defendant's sovereign immunity argument has merit.

"Although the Tennessee Legislature has waived its immunity to THRA suits in Tennessee courts, it has not done so for suits in federal courts. Federal courts in Tennessee have consistently held that suits against state entities brought by individuals under the THRA in federal court are disallowed by the Eleventh Amendment." *Chapman v. Tennessee Dep't of Transp.*, No. 3:19-CV-01128, 2021 WL 1110668, at *2 (M.D. Tenn. Mar. 23, 2021) (citations omitted). Though the preceding quote references the Eleventh Amendment and thus reflects the confusion discussed above, it is clear—in light of *WCI, Inc.*, 18 F.4th 509 and in light of additional language in *Chapman*—that it is actually Tennessee's sovereign immunity that bars federal courts from hearing THRA suits without Tennessee's consent. *See Chapman*, 2021 WL 1110668, at *3 ("Any alleged 'preference' for federal jurisdiction in cases based on 'a common nucleus of operative facts' cannot overcome the well-established doctrine of sovereign immunity."); *see also Miller*, 2016 WL 3213641, at *3-4 (specifically holding that a plaintiff's THRA claims against the Tennessee DHS were barred by sovereign immunity).

Accordingly, Plaintiff's claims under the THRA will be dismissed without prejudice for a lack of personal jurisdiction.

## II. Plaintiff's Claims Are Barred in Part by the One-Year Limitations Period

Defendant brings a Rule 12(b)(6) motion to dismiss some of Plaintiff's Rehabilitation Act claims on the basis that the applicable limitations period, which Defendant asserts is one year, expired prior to her filing the present action. A statute-of-limitations argument is an affirmative defense. Fed. R. Civ. P. 8(c). A plaintiff does not need to plead the lack of an affirmative defense to state a valid claim. *Thompson v. Hendrickson USA, LLC*, No. 3:20-cv-00482, 2021 WL 848694,

at *3 (M.D. Tenn. Mar. 5, 2021) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).

> For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case . . . dismissing the claim under Rule 12(b)(6) is appropriate.

*Id.* (quoting *Cataldo*, 676 F.3d at 547).

The Rehabilitation Act does not itself provide a statute of limitations, and therefore the applicable limitations period is "determined by the 'most analogous' state law statute of limitations." *Hamilton v. Carson-Newman Coll.*, No. 3:09-CV-479, 2010 WL 3806503, at *3 (E.D. Tenn. Sept. 23, 2010) (citing *Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250 (6th Cir. 1995)). Under Tennessee law, this is the one-year limitations period applicable to personal injury actions. *Id.* (citing *Williams v. Trevecca Nazarene Coll.*, 162 F.3d 1162 n.2 (6th Cir. 1998)).

Though the limitations period is borrowed from state law, "the actions accrue and the statutory period begins to run according to federal law." *Bishop v. Child.'s Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010). "The general federal rule is that 'the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury.'" *Id.* (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)). To the extent possible, the Court will determine, from the face of the Complaint, the apparent time at which each of Plaintiff's challenged claims accrued—thus beginning the running of the limitations period.

### A. Plaintiff's Failure-to-Accommodate Claim Is Not Time-Barred

Defendant argues that Plaintiff's failure-to-accommodate claim accrued in November 2019 and therefore was barred by the one-year limitations period by the time Plaintiff filed the present

action on June 1, 2021. In response, Plaintiff contends that her accommodation request has never been formally responded to, and thus remained pending within a year of the date she filed the present case. Additionally, Plaintiff notes that because of the COVID-19 pandemic, all employees have been working from home (as of August 2021), that therefore Plaintiff has not since been driving, and that her requested accommodation thus is temporarily moot.

The Court must first determine if and when Plaintiff's failure-to-accommodate claim accrued. Though an "unreasonable delay" in responding to an accommodation request *can* constitute a constructive denial of a request for an accommodation—and thereby effectuate the accrual of a claim for a failure to accommodate—whether it *actually does so* in a particular case usually depends upon a variety of case-specific facts, such as "the employer's good faith [or lack thereof] in attempting to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations." *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020); *see also Edmunds v. Bd. of Control of E. Michigan Univ.*, No. 09-11648, 2009 WL 5171794, at *5 (E.D. Mich. Dec. 23, 2009) (noting that a determination of an "unreasonable delay" depends upon "the length of the delay, the reasons for the delay, whether the program has offered any alternative accommodations while evaluating a particular request, and whether the program has acted in good faith.").

Here, Plaintiff's Complaint alleges that Defendant "willfully and intentionally" failed to accommodate her when they "ignored and delayed [her] request for accommodation." (Doc. No. 1 at 6). The Court construes this as Plaintiff alleging that Defendant, by delaying unreasonably in responding to Plaintiff's request for an accommodation, eventually became culpable of a "failure" to accommodate—such that her failure-to-accommodate claim accrued—at some point prior to her

filing the present action.[7] However, from the facts alleged in the Complaint, the Court cannot determine any particular date of accrual. Accordingly, in light of the standard that "[a] motion to dismiss based on the statute of limitations, 'can be granted only where the defense appears valid from the face of the Complaint alone,'" the Court cannot dismiss Plaintiff's failure-to-accommodate claim on the (alleged) grounds that it accrued more than a year before her filing of the present action. *See Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 743 (S.D. Ohio 2020) (quoting *Navarro v. The Procter and Gamble Co.*, No. 1:17-cv-406, 2019 WL 162638, at *3 (S.D. Ohio Jan. 10, 2019)). Defendant's Motion to Dismiss will be denied as to Plaintiff's failure-to-accommodate claim.[8]

---

[7] The Court notes that Plaintiff's Response appears to assert a conflicting theory of her failure-to-accommodate claim. Plaintiff's Response argues that Plaintiff's failure-to-accommodate claim "remain[s] pending" and therefore cannot be subject to any limitations period as her request "has neither been denied nor granted." (Doc. No. 16 at 2-3). However, were the Court to accept this argument as true, then it would have to dismiss Plaintiff's failure-to-accommodate claim as unripe for never having accrued at all. Instead, the Court will give Plaintiff the benefit of the doubt and rely on the factual assertions in her Complaint, rather than those made in her Response. *See generally Gomez v. Early Warning Servs., LLC*, No. 12-2181-SHM-DKV, 2013 WL 12147021, at *2, n.2 (W.D. Tenn. July 18, 2013), *report and recommendation adopted*, No. 12-2181, 2013 WL 12147022 (W.D. Tenn. Oct. 25, 2013) ("In analyzing EWS's motion to dismiss, the court will not consider the additional facts alleged in Gomez's response in opposition to EWS's motion to dismiss. 'The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint.'") (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001)); *Neal v. Shelby Cnty. Gov't Cmty. Servs. Agency*, 815 F. Supp. 2d 999, 1002–03 (W.D. Tenn. 2011) ("As an initial matter, the Court notes that, for purposes of determining Defendant's motion to dismiss, it may not consider the factual allegations contained in Plaintiff's original complaint or her response in opposition to Defendant's motion.").

[8] Plaintiff alternatively argues that the one-year limitations period does not bar her claim because Defendant's "partial addressing of some but not all her requests is evidence of a series of continued violations of her right to a reasonable accommodation." (Doc. No. 16 at 4). However, the Sixth Circuit has noted that

> In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 2070, 153 L.Ed.2d 106 (2002), the Court held that when an employee seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period. *Id.* at 2072. According to the Supreme Court, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each

## B. Plaintiff's Retaliation Claims Premised on Increased Driving and Withdrawal of Administrative Support Are Time-Barred

Defendant additionally argues that the one-year limitations period bars Plaintiff's Rehabilitation Act retaliation claims premised on her increased driving time and the withdrawal of her administrative support. Plaintiff fails to respond to this argument. As noted above, where a party fails to respond to an argument in a motion to dismiss "the Court assumes he concedes this point and abandons the claim." *PNC Bank, Nat. Ass'n*, 88 F. Supp. 3d at 785 (quoting *Mekani*, 752 F. Supp. 2d at 797); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the defendant's motion to dismiss).

Accordingly, Defendant's Motion will be granted as to Plaintiff's retaliation claims premised on an increased workload and a loss of administrative support.

## III. Plaintiff's Retaliation Claim Premised on Plaintiff's Non-Promotion Survives Defendant's Motion to Dismiss

---

retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.*

*Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). And a failure to accommodate has repeatedly been considered a discrete act of discrimination. *See, e.g.*, *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) ("In his complaint, [the plaintiff] alleged that [his employer] failed to accommodate his mental disability by refusing to promote him, transfer him, or provide him with adequate counseling, all of which are discrete discriminatory acts."); *Boyd v. Rich Prod. Corp.*, No. 10-2317-STA, 2011 WL 3585966, at *5 (W.D. Tenn. Aug. 16, 2011) ("The Sixth Circuit has held in the ADA context that termination and failure to accommodate claims, particularly insofar as they differ in kind and occur on different dates, are discrete acts." (citing *Jones v. Sumser Retirement Vill.*, 209 F.3d 851, 853-54 (6th Cir. 2000)). Instead of applying to claims based on discrete acts, generally "[t]he continuing-violation doctrine *only applies in hostile-work-environment cases*, as '[t]heir very nature involves repeated conduct' where the claim is 'based on the cumulative effect of all such acts.'" *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 613–14 (6th Cir. 2020) (emphasis added) (quoting *Morgan*, 536 U.S. at 122). But even in the aftermath of *Morgan*, the continuing-violation doctrine can apply to claims other than hostile-work-environment claims under limited circumstances, namely, where the acts challenged by the claim (such as alleged acts of failure to accommodate) are part of a "longstanding and demonstrable policy of discrimination." *Sharpe*, 319 F.3d at 268. Plaintiff has not attempted to justify application of the continuing violations doctrine in this manner, nor has she alleged the existence of any such policy. Plaintiff's claim for failure to accommodate therefore is not subject to a continuing violations theory.

Defendant's final argument is that Plaintiff's retaliation claim based upon her non-selection for a promotion should be dismissed because it fails "to offer little more than conclusory allegations" and alleges a "too attenuated" connection between Plaintiff's protected activity (requesting an accommodation/filing an EEOC complaint) and Defendant's adverse action (not promoting Plaintiff).

The retaliation claim here is brought under Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794. As the Sixth Circuit has explained:

> Both the ADA [Americans with Disabilities Act] and Section 504 prohibit retaliation against any individual because of his or her opposing practices made unlawful by the Acts or otherwise seeking to enforce rights under the Acts. *See, e.g.,* 42 U.S.C. § 12203 *and* 28 C.F.R. 35.134 (ADA); 29 U.S.C. § 794(a) *and* 29 C.F.R. § 33.13 (Section 504). The Acts have a similar scope and aim; for purposes of retaliation analysis, cases construing either Act are generally applicable to both.

*A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696–97 (6th Cir. 2013).[9]

Notably, when ruling on a Rule 12(b)(6) motion to dismiss, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), is inapplicable.[10] This means, among other

---

[9] Section 504 itself does not contain an anti-retaliation provision. However, it does authorize the promulgation of regulations intended to carry out the purposes of the Rehabilitation Act. One of those regulations, 29 C.F.R. § 33.13, is the one cited by the Sixth Circuit as the source (along with Section 504 itself) of the Rehabilitation Act's anti-retaliation provision. That regulation provides: "No person may discharge, intimidate, retaliate, threaten, coerce or otherwise discriminate against any person *because* such person has filed a complaint, furnished information, assisted or participated in any manner in an investigation, review, hearing or any other activity related to the administration of, or exercise of authority under, or privilege secured by section 504 and the regulations in this part." 29 C.F.R. § 33.13 (emphasis added). As indicated in *A.C. ex rel. J.C.*, this provision clearly indicates that unlawful retaliation occurs only where there is causal connection between the protected conduct (filing a complaint, etc., based on the Rehabilitation Act) and the act(s) of retaliation.

[10] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* framework as follows:

things, that a plaintiff need not allege facts specifically indicating that the plaintiff could carry the burden she would ultimately bear *if* (as may or may not prove to be the case) she were to seek to avail herself of an indirect-evidence theory as permitted by *McDonnell Douglas*. This is because *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). A plaintiff is not required to plead what would qualify as a *prima facie* case for purposes of *McDonnell Douglas*. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."); *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-tmp, 2014 WL 1330309, at *6 (W.D. Tenn. Mar. 28, 2014) ("In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead all of the elements of the prima facie case in order to survive a motion to dismiss."). After all, "*McDonnell Douglas* ultimately may not apply at all in a particular case; in particular it would not apply if the plaintiff can rely on direct evidence of discrimination, rather than indirect evidence of discrimination (which is what *McDonnell Douglas* deals with)." *Thompson v. Hendrickson USA, LLC*, No. 3:20-CV-00482, 2021 WL 848694, at *5 (M.D. Tenn. Mar. 5, 2021). So it makes no sense to apply *McDonnell Douglas* at the pleading stage. Instead, to survive a Rule 12(b)(6) motion to dismiss, Plaintiff must satisfy *Iqbal's* general

---

A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

plausibility requirement. *Id.* (quoting *Jodry v. Fire Door Sols., LLC*, No. 3:20-cv-00243, 2020 WL 7769924, at *3–4 (M.D. Tenn. Dec. 30, 2020)).

The very nature of a retaliation claim under the Rehabilitation Act, noted above, is such that it is not plausible absent facts plausibly suggesting a causal connection between the alleged protected conduct and the alleged act(s) of retaliation. And Defendant specifically disputes that Plaintiff's Complaint plausibly alleged a causal connection between her requesting an accommodation and/or filing an EEOC complaint (the alleged protected activity) and her not being promoted (the particular alleged act of retaliation implicated by Defendant's argument here). In fact, Defendant challenges Plaintiff's Rehabilitation Act retaliation claim premised specifically on a failure to promote solely on the grounds of an alleged failure to plausibly allege the required causal connection. As evidence for its argument, Defendant attaches a document purporting to show when Plaintiff applied for and was denied the promotion,[11] arguing that the time period between her last example of protected conduct and her non-promotion "does not support an inference of causation." (Doc. No. 10 at 12).

However, as previously noted, beyond the Complaint and its attachments, only documents that are referred to in the Complaint and integral to the claims can be considered on a motion to dismiss without converting it to a motion for summary judgment. Defendant argues that the document in question is "specifically referenced in paragraph 29 of the Complaint and is central to Plaintiff's retaliation claim." (Doc. No. 10 at 12 n.5). Upon review of the document, however, the Court does not find that it may be considered in a review of this Motion. Although generally referring to Plaintiff being "turned down for a promotion," the Complaint (contrary to Defendant's

---

[11] The document attached by Defendant (Doc. No. 10-2) appears to be screenshot showing particular content from some sort of online job application system.

assertions) makes no mention of a *written application* for the promotion, let alone the specific document upon which Defendant relies. Accordingly, the Court will not consider the document provided by Defendant in its determination as to whether or not Plaintiff stated a claim for retaliation under the Rehabilitation Act.

Plaintiff's Complaint need only contain sufficient factual matter to state a plausible causal connection between her protected conduct and her non-promotion. *See Iqbal*, 556 U.S. at 678. "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys*, 684 F.3d at 610. In terms of a causal connection, temporal proximity can often help demonstrate a causal connection between two events, "and where the adverse action comes 'very close in time' after the exercise of protected activity, 'such temporal proximity . . . is significant enough' to meet the burden alone." *A.C. ex rel. J.C.*, 711 F.3d at 699[12] (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

Plaintiff's Complaint does note that she was "[r]ecently . . . turned down for a promotion even though she was better qualified than the person that was promoted." (Doc. No. 1 at 6). Additionally, the Complaint states that the non-promotion was due to Plaintiff's "request for reasonable accommodation" or "because she filed the EEOC complaint." (*Id.*). There is no clear timeframe mentioned in the Complaint for when the protected conduct occurred in relation to the non-promotion, but at this stage, the Court will draw an inference (in Plaintiff's favor, as required

---

[12] Although *A.C. ex rel. J.C.* here is discussing how a plaintiff can establish a *prima facie* indirect-evidence case in response to a defendant's motion for summary judgment, the discussion of temporal proximity as evidence of a causal connection is still applicable and instructive in assessing whether a plaintiff has met the general plausibility standard for pleading the causal connection so as to prevail on a motion to dismiss.

at this stage) from the term "recently" that there is a temporal connection between the two events.[13] And when viewed in the light most favorable to Plaintiff, other facts (unrelated to mere temporal considerations) alleged in Plaintiff's Complaint—specifically, the fact that Plaintiff's medical information was shared with people who did not need to be aware of Plaintiff's disability and Defendant's track record of being non-receptive to Plaintiff's requests for accommodation—support a reasonable inference of a causal relationship between Plaintiff's protected conduct (either requesting an accommodation, making an EEOC complaint, or both) and her non-promotion.

Defendant's Motion to Dismiss will be denied as to Plaintiff's Rehabilitation Act retaliation claim to the extent that it is premised on her non-promotion.

## CONCLUSION

For the reasons indicated herein, Defendant's Motion will be **GRANTED in part** and **DENIED in part**. Defendant's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction will be **GRANTED**, and Plaintiff's THRA claims will be **DISMISSED without prejudice** for lack of personal jurisdiction. Defendant's Rule 12(b)(6) Motion will be **DENIED** as to Plaintiff's Rehabilitation Act failure-to-accommodate claim and her Rehabilitation Act retaliation claim premised on Plaintiff's non-promotion. Defendant's Rule 12(b)(6) Motion will be **GRANTED** as to Plaintiff's Rehabilitation Act retaliation claims premised on increased driving time and withdrawal of administrative support; and those claims will be **DISMISSED with prejudice.**

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[13] This is hardly ideal pleading, but the Court will not dismiss a plaintiff's (potentially meritorious) cause of action merely because plaintiff's counsel did not expand on dates in the complaint.